George KOVIAN, Hibjay Corp., Kelly Lumber Company, Inc., through its Trustee in Bankruptcy, Richard H. Weiner, Stephen Barker, Alfred Cheney, Gamray Technology, Inc., Columbia Rentals of Gloversville, Inc., Nagaho Construction, Peter Gamaldi, Patricia Gamaldi, Plaintiffs,

v.

The FULTON COUNTY NATIONAL BANK AND TRUST COMPANY, Charles Moyses, John Valorize, Vincent Salluzzo, Robert Salluzzo, Gleason and Salluzzo, Adirondack Homesites, Inc., Capital Medical Leasing Corporation, Hoye & Hoye, Theodore E. Hoye, Jr., Charles Pratt, Defendants.

No. 86–CV–154.

United States District Court, N.D. New York.

May 30, 2000.

Breeze & Rhodes–Devey, P.C., Slingerlands, NY, Michael Rhodes–Devey, for plaintiffs.

Hiscock & Barclay, LLP, Syracuse, NY, Judith M. Sayles, for defendant Fulton County National Bank and Trust Company.

Menter, Rudin & Trivelpiece, P.C., Syracuse, NY, Gerald J. Mathews, Julian B. Modesti, of counsel, for Charles Pratt.

## MEMORANDUM–DECISION and ORDER

MUNSON, Senior District Judge.

Currently before the Court are motions for summary judgment by defendants Fulton County National Bank and Trust Com-

pany ("the Bank") and Charles Pratt, which plaintiffs oppose. For the reasons that follow, the Court grants both motions.

## DISCUSSION

Given that the Court has addressed this matter in four prior decisions, it assumes the parties are largely familiar with plaintiffs' claims, which seek redress under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, *et seq.* For those souls who have not been so fortunate as to be involved in this matter, the Court refers them to its prior discussions for a primer. *See Kovian v. Fulton County Nat'l Bank & Trust Co.,* 647 F.Supp. 830 (N.D.N.Y.1986) (*"Kovian I"*); *Kovian v. Fulton County Nat'l Bank & Trust Co.,* No. 86–CV–154, 1990 WL 36809 (N.D.N.Y. Mar.28, 1990) (*"Kovian II"*); *Kovian v. Fulton County Nat'l Bank & Trust Co.,* No. 86–CV–154, 1992 WL 106814 (N.D.N.Y. May 13, 1992) (*"Kovian III"*); *Kovian v. Fulton County Nat'l Bank & Trust Co.,* 857 F.Supp. 1032 (N.D.N.Y.1994) (*"Kovian IV"*).

Much has happened since the onset of this litigation, which the Court touches upon briefly here. Plaintiff George Kovian filed his original complaint on February 7, 1986. The Bank responded with a motion to dismiss, which the Court granted on May 27, 1986. In granting the motion, however, the Court gave Kovian leave to file an amended complaint. He did. The Bank moved to dismiss Kovian's amended complaint and on November 10, 1986, the Court again granted the Bank's motion and again granted Kovian leave to file another amended complaint. Kovian filed his second amended complaint on January 27, 1987, along with motions for reconsideration and for leave to add new plaintiffs (*i.e.,* all plaintiffs in this action save himself), a new defendant, Charles Pratt, and to dismiss the complaint against defendant John Gleason.

For the third time, the Bank moved to dismiss Kovian's complaint. On March 26, 1990, the Court issued its ruling, which: (1) denied Kovian's motion for reconsideration; (2) granted his motion to add new parties and dismiss Gleason; and (3) granted, in part, and denied, in part, the Bank's motion to dismiss. Although the Court's decision dismissed plaintiffs' first and fourth causes of action, their second and third claims—which allege mail fraud predicate RICO acts—survived the Bank's motion. After the Court's ruling, the Bank filed a motion for leave to file an amended answer with counterclaims and cross-claims, which the Court granted. The Bank's amended answer followed.

On November 20, 1992, Pratt moved for summary judgment against plaintiffs Hibjay Corp. ("Hibjay"), Kelly Lumber Company, Inc. ("Kelly Lumber"), Stephen Barker and Alfred Cheney. Plaintiffs, who opposed the motion, filed a cross-motion for sanctions. By decision dated July 13, 1994, the Court denied both motions.

Since that date, the Court has had little to do with this case, although it did allow plaintiffs to substitute new counsel on October 22, 1996. The parties appear to have been active, however. In addition to completing discovery, the parties engaged in settlement talks, the result of which led to defendants Robert Salluzzo and his accounting firm, Gleason & Salluzzo, and Theodore E. Hoye, Jr. and his law firm, Hoye & Hoye, to settle this matter with plaintiffs. As plaintiffs have discontinued their action against those four defendants, the only remaining defendants are the Bank, Pratt, Charles Moyses, John Valerius, and Vincent Salluzzo and two of his corporations: Adirondack Homesites, Inc. ("Adirondack Homesites") and Capital Medical Leasing Corporation ("Capital Medical"). Both the Bank and Pratt now seek summary judgment.

The Bank argues there is no genuine issue of fact requiring trial on the two causes of action remaining against it. As to plaintiffs' second claim, the Bank argues it must be dismissed because: (1) as the alleged RICO enterprise, it cannot be liable under § 1962(c); and (2) the § 1962(d) claim lodged against it is deficient as a matter of law. As to their third claim, the Bank submits it should be dismissed because: (1) the Bank, Pratt and Moyses, as the alleged RICO association-in-fact enterprise, are immune from liability in a § 1962(c) claim; (2) plaintiffs' allegations against the alleged association-in-fact enterprise are inadequate as a matter of law; and (3) plaintiffs fail to allege the required distinctness between the Bank as a member of the alleged RICO association-in-fact enterprise and the Bank as a RICO person.

Pratt likewise argues he must be dismissed from this action. He insists that plaintiffs' second claim, brought under § 1962(c), is deficient because it fails to allege a distinctness between the RICO enterprise and the RICO person. Moreover, he posits plaintiffs lack standing to pursue a § 1962(c) claim because they can neither sustain their allegation of mail fraud as a predicate act, nor show that his alleged misstatements proximately caused them any damages—or even demonstrate any damages generally. Pratt also raises three defenses: (1) that plaintiff Gamray Technology, Inc.'s ("Gamray") RICO action is barred by the statute of limitations; (2) that plaintiff Kelly Lumber Company, Inc.'s ("Kelly Lumber") is barred by the statute of frauds; and (3) that Gamray ratified the Columbia School project's indebtedness after it learned that the Bank had defrauded it.

Plaintiffs respond that the Court already has ruled on the sufficiency of the Bank as an enterprise allegation as a matter of law and need not revisit the issue. Moreover, they submit that the Bank can be liable pursuant to § 1962(c) under a theory of *respondeat superior*, as the Bank is the "controlling" corporation in the RICO enterprise. Plaintiffs also contest any argument that they have not satisfied

the distinctness element required by the aforementioned statute, and submit that they have shown facts which demonstrate an association-in-fact enterprise sufficient to survive summary judgment. Finally, they insist not only that they have proven a *prima facie* predicate case of mail fraud, but also that the statutes of frauds and of limitations arguments Pratt raises are misguided.

The Court examines these arguments *seriatim.*

## DISCUSSION

### I. Standard for Summary Judgment

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *In Re Blackwood Assoc., L.P.,* 153 F.3d 61, 67 (2d Cir.1998) (*citing* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *Castle Rock Entertainment, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir.1998) (*citing Garza v. Marine Transp. Lines, Inc.,* 861 F.2d 23, 26 (2d Cir.1988)). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the nonmovant, summary judgment is unavailable. *See Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996). The trial court's responsibility is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir.1996) (*quoting Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir.1994)).

However, when there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, there must exist "specific facts showing that there is a genuine issue for trial" in order to deny summary judgment as to a particular claim. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548, 91 L.Ed.2d 265.

### II. Plaintiffs' Second Claim against the Bank and Pratt

In pertinent part, plaintiffs allege the Bank is an "enterprise" engaged in activities implicating interstate commerce, and that during their employment at the Bank, Moyses and Pratt "conducted and participated, directly and indirectly, in the conduct of the Bank's affairs through a pattern of racketeering activity ... in violation of 18 U.S.C. Section 1962(c)." Second Amend. Compl. at ¶¶ 218–19. Under § 1962(c), if a plaintiff chooses to identify a corporation as the enterprise through which its employees, as persons, conducted the RICO activity, that corporation is insulated from liability.[1] *See Rodriguez v. Banco Central,* 777 F.Supp. 1043, 1053–54 (D.P.R.1991), *aff'd on other grounds,* 990 F.2d 7 (1st Cir.1993) (*citing Langley v. American Bank of Wisconsin,* 738 F.Supp. 1232, 1241 (E.D.Wis.1990)). Such is the case here, therefore the Bank is entitled to summary judgment on plaintiffs' § 1962(c) action raised in their second claim.

Plaintiffs' second claim raises an additional allegation involving the Bank, which states:

> or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. (Emphasis supplied).

---

1. That statute reads:
   (c) It shall be unlawful for any *person* employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct

defendants Valerius, Vincent Salluzzo, Robert Salluzzo, Gleason and Salluzzo, Adirondack, Capital, Theodore Hoye, Hoye & Hoye did unlawfully and knowingly ... conspire ... with each other and with Moyses and with unknown others to conduct and participate, directly and indirectly, in the conduct of the Bank's affairs through a pattern of racketeering activity ... in violation of 18 U.S.C. Section 1962(d).

Second Amend. Compl. at ¶ 224.

Section 1962(d) provides that "[i]t shall be unlawful for any *person* to conspire to violate any of the provisions of subsection (a), (b), or (c) of [Section 1962]." (Emphasis supplied). A RICO "person" includes "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). Again, plaintiffs insist the Bank is the RICO enterprise and not a RICO person, which is fatal to their instant claim.

Plaintiffs posit the bank can be liable for the predicate acts of its employees under a theory of *respondeat superior.* Assuming *arguendo* that plaintiffs can raise this argument now, when they failed to raise it beforehand, the Court finds it unconvincing. As courts have noted, plaintiffs face a substantial burden, as "vicarious liability has been held to be at odds with Congressional intent in enacting RICO [because] the statute was designed to protect corporations from criminal infiltration rather than hold them liable." *Qatar Nat'l. Navigation & Transp. Co. Ltd. v. Citibank, N.A.,* No. 89 Civ. 0464(CSH), 1992 WL 276565, at *7 (S.D.N.Y. Sep.29, 1992) (citations omitted); *see also Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 351 (S.D.N.Y. 1998). Accordingly, courts in this circuit generally have been adverse to claims of vicarious liability under RICO, *id.,* and these courts hold that *respondeat superior* is available under RICO only when the defendant corporation can be characterized as the "central" or "controlling" figure in the RICO enterprise. *See Amendolare v. Schenkers Intern. Forwarders, Inc.,* 747 F.Supp. 162, 168 (E.D.N.Y.1990).[2]

■ For purposes of vicarious RICO liability, courts distinguish "between 'aggressor' corporations that are central figures in the unlawful scheme and 'conduit' corporations that unknowingly facilitate the illegal behavior" and noted that most courts "have declined to subject the [latter] to RICO liability." *Id.* A corporation is a "central figure" for purposes of vicarious RICO liability if one of its officers or directors either had knowledge of, or was recklessly indifferent to, the alleged unlawful activity. If knowledge or reckless indifference at this high corporate level has been demonstrated, then a court may consider other factors, such as the number of high-level employees involved in the racketeering activity, their degree of participation in the racketeering activity, whether these high-level employees themselves committed the alleged predicate acts, and whether the corporation directly and substantially benefitted from the racketeering activity. *See Gruber v. Prudential–Bache Sec., Inc.,* 679 F.Supp. 165, 181 (D.Conn. 1987). Here is a caveat, however: the mere fact that a corporation benefits from an illegal scheme will not establish that it participated as a 'central figure' in that scheme. *Id.*

Moyses and Pratt certainly qualify as high ranking officers of the Bank; while the former was its vice-president, the latter was its president. Yet, as plaintiffs concede in their memorandum of law, these two "in large part, [were] acting outside the scope of their employment in their complained of conduct." Plfs' Mem. Of Law at 28. In other words, "the [alleged] fraud by Moyses and Pratt was *ultra vires* to their positions as bank officers." *Id.* Under these circumstances, it is inappropriate to find the Bank may be

---

**2.** Indeed, in one landmark RICO case, the First Circuit held that *respondeat superior* was an impermissible means of imposing liability on a corporate enterprise. *See Schofield v. First Commodity Corp. of Boston,* 793 F.2d 28, 32–34 (1st Cir.1986).

vicariously liable for its officers' alleged wrongdoings. *See, e.g., Qatar,* 1992 WL 276565, at *8 (refusing to impose vicarious RICO liability on bank for actions of employee who was both Assistant Vice–President and Branch Manager because employee's actions were undertaken without bank's knowledge); *Continental Data Sys., Inc. v. Exxon Corp.,* 638 F.Supp. 432, 440 (E.D.Pa.1986) (corporation not vicariously liable under RICO for actions of branch manager, marketing manager and senior sales representative).

Plaintiffs' second cause of action against the Bank and Pratt is dismissed.

### III. Plaintiffs' Third Claim against the Bank

■ Plaintiffs' third claim, also lodged pursuant to § 1962(c), alleges that Moyses, Pratt and the Bank were an association-in-fact enterprise engaged in activities affecting interstate commerce.[3] *See* Second Amend. Compl. at ¶¶ 231–32. Under § 1962(c), an enterprise and the persons conducting the affairs of an enterprise must be distinct. *See R.C.M. Executive Gallery Corp. v. Rols Capital Co.,* 901 F.Supp. 630, 639–40 (S.D.N.Y.1995).

In *Kovian II,* the Court determined that for purposes of opposing a motion to dismiss, the alleged enterprise comprising Moyses, Pratt and the Bank fulfilled the RICO enterprise requirements elucidated in *Procter & Gamble Co. v. Big Apple Industrial Buildings, Inc.,* 879 F.2d 10 (2d Cir.1989) (holding an enterprise is "generally a group of persons associated together for a common purpose of engaging in a course of conduct"). The Court, however, never addressed the "distinctness" argument that the Bank raises now, mainly because the seminal *Riverwoods* case had yet to be decided by the Second Circuit.

*Riverwoods* holds that a corporate entity cannot be both the "person" conducting the affairs of the enterprise and the "enterprise" itself. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir.1994) (holding that bank and two of its loan officers could not form RICO enterprise). Furthermore, "this distinctiveness requirement may not be circumvented by alleging a conspiracy between the defendant [corporation] and its own employees or agents carrying on the regular affairs of the defendant." *China Trust Bank of New York v. Standard Chartered Bank, PLC,* 981 F.Supp. 282, 286 (S.D.N.Y.1997). The Bank contends plaintiffs have not satisfied the distinctiveness requirement and, as explained *supra,* the Court agrees.

To circumvent the holding in *Riverwoods,* plaintiffs raise a novel argument. They acknowledge *Riverwoods* teaches that "where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation." *Id.* at 344. Their position, though, is that *Riverwoods* is inapplicable because Moyses and Pratt conducted their affairs *outside* of the scope of their employment with the Bank. Yet, to argue, as plaintiffs have, that "[u]nder no conception of the legitimate role of the Bank [ ] would Moyses and Pratt be authorized to engage in fraudulent practices and use fraudulent representations to further the goals of the Bank" concedes defeat. Plfs' Mem. Of Law at 15.

Plaintiffs' case against the Bank, especially, to this point has been based upon precisely the opposite conclusion: that the Bank's liability derived from its employees' alleged wrongdoing. Indeed, the Court addressed and dispatched this very argument earlier, when it found no merit to plaintiffs' *respondeat superior argument.*

---

**3.** The third cause of action alleges mail fraud in the Kovian scheme. As the Court dismissed Pratt from the Kovian scheme previously, *see Kovian II,* 1990 WL 36809, at *25, the Court addresses the parties' arguments pertaining to the Bank's potential liability only.

If *respondeat superior* is unavailable to plaintiffs as a theory of liability, then to hold the Bank liable, they must demonstrate evidence that the institution committed its own predicate acts. As the Bank submits, plaintiffs have not produced evidence of "any independent acts by the Bank that satisfy the basic elements of a RICO claim." Dft. Bank's Reply Mem. Of Law at 16. Thus, even if the Court were to accept plaintiffs' instant argument—that Moyses' and Pratt's *ultra vires* acts were "distinct" from the Bank's acts, therefore creating an exception to *Riverwoods*—this argument would fail for want of evidence of that the Bank committed its own predicate RICO acts.

Plaintiffs' proposed RICO enterprise comprising the Bank, Pratt and Moyses fails for a lack of distinctiveness, therefore their third cause of action against the Bank is dismissed.

### CONCLUSION

Based upon the foregoing, the Bank's motion for summary judgment is **GRANTED** and Pratt's motion for summary judgment is **GRANTED,** meaning that Plaintiffs' complaint is dismissed as to those two defendants.

**IT IS SO ORDERED.**